IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TOBY JOE BARLEY, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00280 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW RIVER VALLEY REGIONAL | ) | By: Elizabeth K. Dillon |
| JAIL MEDICAL DEPT., *et al.*, | ) | United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Toby Joe Barley, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983 against the New River Valley Regional Jail Medical Department ("Medical Department"), Superintendent McPeak, "Head of Medical" Betty Akers, and Nurses Lowe and Neel. Barley alleges that the defendants denied him adequate medical treatment.[1] Defendants filed motions to dismiss, and Barley responded, making this matter ripe for disposition. Having considered the record, the court will grant the motion to dismiss by the Medical Department, McPeak, and Akers, but will deny the motion to dismiss by Lowe and Neel.

I.

Barley alleges that after arriving at the New River Valley Regional Jail, he developed a "bad rash" that caused him pain, got infected, and was so "raw from itching" that he had trouble sleeping. Barley states that he saw the doctor "numerous times" and "medical tried to the treat the rash, but was uns[uccess]ful." Medical staff attributed the rash to everything from "soap, water, deodorant, [his] nerves, [a] yeast infection, to mites." Barley alleges that although his

---

[1] Barley also filed additional evidence (Dkt. No. 30), which the court construes as a motion to amend. In his motion to amend, Barley adds additional facts in support of his claims, provides more detail concerning his efforts to administratively exhaust his claims (*see also* Dkt. No. 31), and specifies the relief he seeks. Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a party may amend its pleading with the court's leave and the "court should freely give leave when justice so requires." Finding it in the interest of justice, the court will grant Barley's motion to amend.

request to go to the hospital or a dermatologist was refused, he did receive "pills and creams of all type[s]," antibiotics, and steroids to treat the rash. Barley states that he sent "numerous request[s] and letters" about the rash to defendants McPeak and Akers, but they "would not lis[ten] or bel[ie]ve" him when he told them that he was allergic to the dye in the prison uniforms or the detergent used to wash them.

Barley alleges that from 6:00 p.m. on May 10, 2015, to 6:00 a.m. on May 11, 2015, he was seen by defendants Lowe and Neel concerning his rash. Barley states that Lowe thought that Barley might have mites and recommended "mite killer treatment." Lowe told Barley that "it was worth a try" and would not hurt him or make the rash any worse. Lowe called the doctor by telephone before administering the treatment, and the doctor approved it. Barley was told that he would stay in the medical department for the night and could not wash the mite killer treatment off for six or eight hours. Barley alleges that within seconds of rubbing the treatment on his body, he started feeling a "burning." Barley states that his skin turned red and he started "begging" for help. While Barley was beating on the door, Lowe came to see him. He told her that the mite killer treatment was burning him and asked to wash it off. She told him that "it may be part of the healing process," and denied his request. Lowe left and the pain became so severe that Barley began crying and throwing up. Barley tried to wash the mite killer treatment off with water in his cell sink, but was unsuccessful. Barley continued to beat on the door and Neel came to see him. He asked her to take him to the hospital or let him wash the mite killer treatment off. She denied both requests and told him that only Akers could approve him going to the hospital, but she "wasn't in." Barley states that he had never been in so much pain before and that the treatment burned him. At some point during the night, a sergeant and an officer came to Barley's cell after making rounds. When Barley showed them what was happening to his body,

2

they agreed to get a camera and took pictures of him. When Akers arrived in the morning, she came to Barley's cell, told him to get dressed, and sent him to a dermatologist. Barley alleges that Akers stated that "they should have washed it off." The dermatologist confirmed that Barley was allergic to the dye in the prison uniforms and the detergent used to wash them. Thereafter, Barley was given dye-free uniforms and his uniforms are to be washed in a different detergent.

Defendants filed motions to dismiss arguing that Barley: 1) did not exhaust administrative remedies before filing this action, 2) failed to specify the relief he requests, and 3) failed to demonstrate that the defendants were deliberately indifferent to a serious medical need.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v.*

3

*Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (*quoting Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (*quoting Sado v. Leland Memorial Hospital*, 933 F. Supp. 490, 493 (D. Md. 1996)).

III.

Barley names the Medical Department as a defendant to this action. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a "person" acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Because a medical department is not a legal entity, it is not a "person" subject to suit

4

under § 1983, and Barley cannot maintain this action against it. *See Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001) ("The medical department of a prison may not be sued, because it is not a person within the meaning of § 1983."). Accordingly, the court will dismiss the Medical Department as a defendant to this action.

## IV.

Defendants argue that Barley's complaint should be dismissed because he failed to exhaust administrative remedies before filing the action. After accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Barley, the court must deny defendants' motion to dismiss on this ground.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "'[T]he language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensible requirement, thus requiring an outright dismissal [of unexhausted claims] rather than issuing continuances so that exhaustion may occur.'" *Carpenter v. Hercules*, No. 3:10cv241, 2012 U.S. Dist. LEXIS 72096, at *12, 2012 WL 1895996, at *4 (E.D. Va. May 23, 2012) (emphasis in original) (quoting *Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003)). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful

5

record." *Jones*, 549 U.S. at 219. Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

In support of their argument that Barley's complaint should be dismissed as unexhausted, defendants assert that, "[i]n the complaint, Barley states that he has not filed any grievances concerning the facts of his complaint." However, defendants do not acknowledge that just below that "statement," Barley also stated "I'm not sure if I did or not fil[e] grievances." Further, in his motion to amend, Barley provides more details concerning his exhaustion efforts. Barley also provides the court with copies of several grievances that he filed concerning issued raised in this action. It is unclear from the record whether Barley fully exhausted administrative remedies or whether administrative remedies were available to him. Accordingly, the court denies defendants' motions to dismiss without prejudice as to exhaustion.

IV.

Defendants assert that Barley's complaint should be dismissed because he failed to specify the relief he seeks. However, Barley's amendment to the complaint cured this. Accordingly, the court will deny defendants' motions to dismiss on this basis.

V.

Barley alleges that defendants McPeak and Akers would not listen to or believe him when he tried to tell them that he was allergic to the dye in the uniforms and/or the soap used to wash the uniforms. The court finds that Barley's allegations are insufficient to state a cognizable § 1983 claim against McPeak or Akers and, therefore, will grant their motion to dismiss.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F.Supp. 487, 492 (E.D.Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Barley complains that medical staff incorrectly attributed his rash to many different sources and treated him as a "lab rat" while they tried to determine the cause.[2] However, he acknowledges that during this time, he was receiving medical care under the direction of a doctor at Wallens Ridge. While Barley may disagree with the doctor's decisions, absent exceptional circumstances, an inmate's disagreement with a doctor regarding a course of treatment is

---

[2] The court notes that Barley acknowledges that McPeak and Akers had "no involvement with putting the mite killer" treatment on him. Accordingly, the court's analysis of the allegations against these defendants does not concern the incident involving the mite killer treatment on May 10, 2015.

7

insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Further, negligence in diagnosing and treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

Neither McPeak nor Akers is a doctor. And, Barley does not allege that either of them was responsible for diagnosing his condition or prescribing his treatment. Instead, both were entitled to rely on the doctor's medical judgment regarding the proper diagnosis and treatment for Barley's rash. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)); *Shipley v. Department of Justice Bureau of Prisons*, No. 5:10-CT-3153-FL, 2012 U.S. Dist. LEXIS 127532, at *15, 2012 WL 3887096, at *5 (E.D.N.C. Sept. 7, 2012). Moreover, Barley has not alleged that either McPeak or Akers was "personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physician's misconduct." *Lewis v. Angelone*, 926 F. Supp. 69, 73 (W.D. Va. 1996). Barley has not demonstrated that either defendant acted with deliberate indifference, and his allegations are insufficient to state a claim against them. Accordingly, the court will grant the motion to dismiss of McPeak and Akers.[3]

---

[3] To the extent Barley is attempting to hold McPeak or Akers liable in a supervisory capacity, his allegations fail to state a claim. In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Barley has failed to allege facts that would establish the *Shaw* elements against either McPeak or Akers. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888) ("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub-agents or servants or other persons properly employed by or under him, in the

8

VI.

Barley alleges that Nurses Lowe and Neel were deliberately indifferent to his pain and suffering while the "mite killer treatment" was on his body. The court finds that Barley's complaint, as amended, states a plausible claim for relief against Lowe and Neel and, therefore, will deny their motion to dismiss.

"[A]n inadvertent failure to provide adequate medical care" does not satisfy the deliberate indifference standard; thus, mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. *Estelle*, 429 U.S. at 105-06. Deliberate indifference can be displayed, however, through the response of prison doctors and other institutional personnel to an inmate's medical needs, including ignoring an inmate's serious condition or delaying medically necessary treatment. *Id.* Where the alleged constitutional violation is that medical personnel delayed treatment of a serious medical need, the plaintiff must also demonstrate that the delayed medical treatment caused the plaintiff "substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 166-67 & n.13 (explaining that where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate "'that the delay resulted in substantial harm'" (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1205 (10th Cir. 2000))). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment); *see Smith*, 589 F.3d at 738-39

---

discharge of his official duties."); *Dunlop v. Munroe*, 11 U.S. 242 (1812) (an official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties). Accordingly, the court concludes that Barley has failed to state a constitutional claim against defendants McPeak and Akers.

9

(finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment claim). *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing cases); *see Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Cnty. Corr. Ins'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Barley alleges that he was in the medical care of Lowe and Neel during the time that the mite killer treatment was on his body. He also alleges that he made each of them aware of the severe pain the treatment was causing him. He alleges that both Lowe and Neel denied his requests to be relieved from the burning caused by the mite killer treatment. As a result of their decisions, Barley alleges that he suffered in pain for several hours while his body was burned by the treatment. Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Barley, the court finds that Barley's allegations are sufficient to state a plausible claim for relief against Lowe and Neel. Accordingly, the court will deny their motion to dismiss.

An appropriate order will be entered.

Entered: March 6, 2017.

/s/ *Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge